**United States District Court**
For the Northern District of California

1
2
3
4
5                           UNITED STATES DISTRICT COURT
6                           NORTHERN DISTRICT OF CALIFORNIA
7
8    BOARD OF TRUSTEES OF THE                    No. C-14-1324 EMC
     LABORERS HEALTH AND WELFARE
9    TRUST FUND FOR NORTHERN
     CALIFORNIA, *et al.*,
10                                               **ORDER GRANTING PLAINTIFFS'**
                    Plaintiffs,                  **MOTION FOR DEFAULT JUDGMENT**
11
          v.                                     **(Docket No. 17)**
12
     MONTES BROS. CONSTRUCTION, INC.
13
                    Defendant.
14   _____/
15
16
17        Plaintiffs are fiduciaries for the following trust funds: the Laborers Health and Welfare Trust

18   Fund for Northern California; the Laborers Vacation-Holiday Trust Fund for Northern California;

19   the Laborers Pension Trust Fund for Northern California; and the Laborers Training and Retraining

20   Trust Fund for Northern California (collectively "Trust Funds").  The Trust Funds are all employee

21   benefit plans.  Collectively, Plaintiffs filed suit on behalf of the Trust Funds against Defendant

22   Montes Bros. Construction, Inc. ("Montes Bros."), pursuant to the Labor Management Relations Act

23   of 1947 ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act

24   ("ERISA"), 29 U.S.C. §§ 1132.

25        Plaintiffs filed a Complaint on March 21, 2014 (Docket No. 1).  Defendant failed to respond

26   to the complaint and summons, and Plaintiffs thereafter moved for an Entry of Default (Docket No.

27   11).  This Court entered default against Defendant on May 14, 2014 (Docket No. 16).  Plaintiffs

28

**United States District Court**
For the Northern District of California

1  thereafter filed a Motion for Default Judgment (Docket No. 17), which is now pending before the

2  Court.

3      The Court held a hearing on Plaintiffs' Motion for Default Judgment on November 4, 2014.

4  Having considered Plaintiffs' briefs as well as other evidence of record, the Court hereby **GRANTS**

5  the Motion for Default Judgment.

6                  **I.   FACTUAL & PROCEDURAL BACKGROUND**

7      Plaintiffs filed a complaint against Defendant on March 21, 2014.  Complaint (Docket No.

8  1).  Their complaint alleges the following facts.  Defendant is a signatory to a written collective

9  bargaining agreement with the Northern California District Council of Laborers ("Union").

10  Complaint ¶ IV.  Defendant became subject to the terms of Plaintiffs' "Laborers Master Agreement"

11  when it signed a Letter of Understanding with the Union, which incorporated by reference the

12  Master Agreement.  *Id.*  The Laborers Master Agreement incorporates by reference the various Trust

13  Agreements establishing each of the Plaintiff Trust Funds.  *Id.*  The Master and Trust Agreements

14  provide for prompt payments of all employer contributions to the various Trust Funds.  *Id.* ¶ V.  The

15  agreements also provide for the audit of the signatory employer's books and records in order for the

16  Plaintiffs to determine whether all fringe benefit contributions have been timely paid as required by

17  the Agreements.  *Id.*

18      Pursuant to the Master and Trust Agreements, Plaintiffs conducted an audit of the books and

19  records of Defendant for the period of October 2010 to December 2012.  *Id.* ¶ VII.  Plaintiffs

20  determined that Defendant owed the Trust Funds $31,073.35 in unpaid fringe benefits contributions,

21  $1,200.00 in liquidated damages, and $12,705.09 in interest.  Lauziere Decl., Ex. D (Docket No. 20-

22  D).  To date, Defendant has refused to pay any amount toward these sums.  Lauziere Decl. ¶ 16.

23      On April 1, 2014, copies of the summons and complaint were personally served on Norah

24  Rivera at the mailing address of the principal of Montes Bros., Luis Montes.  *See* Docket No. 10.

25  Norah Rivera told the process server that she is the wife of Luis Montes.  Carvalho Aff. of

26  Reasonable Diligence (Docket No. 25-1).  Defendant failed to respond to the complaint and

27  summons, and Plaintiffs thereafter moved for an Entry of Default.  Docket No. 11.  This Court

28

1   entered default against Defendant on May 14, 2014.  Docket No. 16.  Plaintiffs thereafter filed the

2   pending Motion for Default Judgment.  Docket No. 17.

3          In their motion, Plaintiffs ask for (1) a monetary judgment in the amount of $44,978.43 for

4   delinquent trust fund contributions, liquidated damages, and interest, (2) an award of reasonable

5   attorney's fees, (3) an order directing Defendant to submit to an audit of their books and records, and

6   (4) an order enjoining Defendant to timely submit all required monthly contributions and

7   contribution reports in accordance with the Agreements.  Mot. for Default J. at 2.

8                                    **II.   DISCUSSION**

9   A.      Adequacy of Service of Process

10         As a threshold matter in considering a motion for default judgment, the Court must first

11  "assess the adequacy of the service of process on the party against whom default is requested."

12  *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S.

13  Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).  Fed. R. Civ. P. 4(h)(1) authorizes service upon a

14  corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or

15  general agent, or to any other agent authorized by appointment or by law to receive service of

16  process and – if the agent is one authorized by statute to receive service and the statute so requires –

17  by also mailing a copy of each to the defendant."  Fed. R. Civ. P. 4(h)(1).  Rule 4(h)(1) also states

18  that a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an

19  individual," which, in turn, allows for service "following state law for serving a summons in an

20  action brought in courts of general jurisdiction in the state where the district court is located or

21  where service is made."  Fed. R. Civ. P. 4(e)(1).

22         Under California law, a summons and complaint may be served on a corporation by

23  delivering a copy of the documents (1) to the person designated as agent for service under certain

24  provisions of the California Corporations Code or (2) to the "president or other head of the

25  corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a

26  general manager, or a person authorized by the corporation to receive service of process."  Cal. Code

27  Civ. P. § 416.10(a), (b).  A corporation may also be served under California law via "substituted

28  service."  That is,

**United States District Court**
For the Northern District of California

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. P. § 415.20(b).

While substituted service is, as a general matter, an easier form of service compared to personal delivery, it is not free of limitations. Before a party can resort to substituted service, personal service must first be attempted with "reasonable diligence." California courts have held that "[o]rdinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." *Bein v. Brechtel–Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1390 (1992). Also, "[s]ervice must be made upon a person whose relationship to the person to be served makes it more likely than not that they will deliver process to the named party." *Id.* at 1393 (internal quotation marks omitted).

Initially, the Court had concern as to whether service in the instant case was properly effected on Montes Bros. *See* Docket No. 23. Plaintiffs, however, addressed this concern in their supplemental briefing. A supplemental affidavit of reasonable diligence indicates that a process server tried to serve Luis Montes. Docket No. 25-1. The California Secretary of State lists Luis Montes as Montes Bros.'s agent for service of process. Docket No. 26-1. The affidavit of reasonable diligence states that the process server attempted to serve Mr. Montes twice at the address listed by the California Secretary of State prior to effecting substituted service. *See* Docket No. 25-1. Substituted service was made on Norah Rivera, who stated to the process server that she is the wife of Luis Montes. *Id.* Given Mrs. Rivera's relationship to Luis Montes, the Court finds that service was made upon a person whose relationship to Mr. Montes made it more likely than not that process would be delivered to Mr. Montes. Accordingly, the Court concludes that service of process on Montes Bros. was proper.

4

B.      Merits of Motion for Default Judgment

After entry of a default, a court may grant a default judgment on the merits of the case.  *See*
Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a
discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors that a court may
consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
> the sum of money at stake in the action, (5) the possibility of a dispute
> concerning material facts, (6) whether the default was due to
> excusable neglect, and (7) the strong policy underlying the Federal
> Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Because default has already been entered
in this case, the Court must construe as true all factual allegations in Plaintiffs' complaint except for
those related to the amount of damages.  *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-
18 (9th Cir. 1987).

The Court finds that the *Eitel* factors weigh in favor of granting default judgment.  As to the
first factor, if the motion for default judgment were to be denied, then Plaintiffs would likely be
without a remedy.  *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist.
LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment]
would leave them without a remedy.  Prejudice is also likely in light of the merits of their claims.");
*Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion
for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").
Also, the sum of money at stake in the action is appropriate as it is tailored to the specific alleged
misconduct of Montes Bros.  *See id.* at 1176 (stating that "the court must consider the amount of
money at stake in relation to the seriousness of Defendant's conduct").  In addition, there is nothing
to suggest that there is a possibility of a dispute concerning material facts.  Further, there is no
indication that Montes Bros.'s default was due to excusable neglect.  Finally, while public policy
favors decisions on the merits, *Eitel*, 782 F.2d at 1472, Montes Bros.'s refusal to defend this action
renders a decision on the merits "impractical, if not impossible," *PepsiCo*, 238 F. Supp. 2d at 11.

United States District Court

For the Northern District of California

1    The only factors that deserve closer analysis are the second and third factors—that is, the

2    merits of the Plaintiffs' substantive claim and the sufficiency of the complaint.  Plaintiffs have

3    provided evidence that Montes Bros. entered into an agreement with the Northern California District

4    Council of Laborers.  *See* Lauziere Decl., Ex. C (Letter of Understanding).  Montes Bros. became

5    subject to all terms and conditions of the Laborers Master Agreement by signing a Letter of

6    Understanding with the Union, which incorporated by reference the Master Agreement.  Lauziere

7    Decl. ¶ 7; *id.*, Ex. C (Letter of Understanding).  Under the Laborer's Master Agreement, for the

8    Trust Funds at issue, "each Individual Employer shall pay hourly contributions for each hour paid

9    for and/or worked . . . in accordance with the schedule specified" in the Agreement.  Lauziere Decl.,

10   Ex. B-2 (Laborer's Master Agreement) § 28A.  *See also id.*, Ex. A (Trust Fund Agreements); Ex. B-

11   2, § 28A (providing contribution schedule for individual trust funds).

12   A signatory employer who does not pay hourly contributions to the Trust Funds as specified

13   in the Agreement "agrees that any and all said Trust Funds may enforce this obligation by action to

14   collect such delinquent contributions filed in any court of competent jurisdiction."  *Id.*, Ex. B-2, §

15   28A.  Plaintiffs' complaint alleges, and the Court must accept as true, *see Televideo Sys., Inc.*, 826

16   F.2d at 917, that "an audit of the books and records of Defendant for the period of October 2010

17   through December 2012 was conducted, which revealed that Defendant had not submitted fringe

18   benefit contributions to the Trust Funds as required by the Agreements."  Compl. § VII.  Thus, the

19   Plaintiffs have successfully stated a claim for relief under ERISA.  *See* 29 U.S.C. § 1145 (providing

20   that "every employer who is obligated to make contributions to a multiemployer plan under the

21   terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not

22   inconsistent with the law, make such contributions in accordance with the terms and conditions of

23   such plan or such agreement"); 29 U.S.C. § 1132(a)(3) (authorizing, *inter alia*, a fiduciary to bring a

24   civil action to enforce an employer's § 1145 obligation).

25   For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Default Judgment.

26   C.    Damages and Other Relief

27   Because the Court concludes that default judgment is warranted, it must determine what

28   damages or other relief is appropriate.  Plaintiffs have the burden of "proving up" their damages or

6

United States District Court
For the Northern District of California

1   the need for other requested relief.  *See Board of Trustees of the Boilermaker Vacation Trust v.*
2   *Skelly, Inc.,* No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the
3   burden of proving damages through testimony or written affidavit.").  Under 29 U.S.C. § 1132(g)(2),
4   a court shall award a fiduciary who prevails in a § 1145 claim (A) the unpaid contributions, (B)
5   interest on the unpaid contributions, (C) an amount equal to the greater of the interest on the unpaid
6   contributions or liquidated damages as specified in the plan (generally not to exceed 20 percent of
7   the unpaid contributions), (D) reasonable attorney's fees and costs, and (E) other appropriate legal or
8   equitable relief.  *See* 29 U.S.C. § 1132(g)(2).

9       In its motion for default judgment, Plaintiffs ask for (1) any unpaid contributions from
10   October 2010 to December 2012; (2) liquidated damages for any delinquent contributions and
11   interest; (3) an order directing Defendant to submit to an audit of their books and records, and (4) an
12   order requiring Defendant to timely submit all required monthly contributions and contribution
13   reports in accordance with the Agreements.

14       1.      Unpaid Contributions, Liquidated Damages, and Interest
15       Plaintiffs assert that from October 2010 to December 2012, Montes Bros. failed to make the
16   full contributions to various trusts.  In support of this assertion, Plaintiffs have provided a
17   declaration by Michelle Lauziere, the Accounts Receivable Manager for the Laborers Funds
18   Administrative Office of Northern California, describing the findings of an audit of Montes Bros.'s
19   records.  *See* Lauziere Decl. (Docket No. 20).  Exhibit D to Ms. Lauziere's declaration summarizes
20   the audit results and her calculations of all Trust Fund contributions due and owing.  *See* Lauziere
21   Decl., Ex. D.

22       Based on the audit of Montes Bros.'s records, Ms. Lauziere determined that Defendant had
23   not submitted fringe benefit contributions for 1805.5 hours of covered work, which, at the applicable
24   hourly contribution rates set forth in the Master Agreement, amounts to $31,073.35 in unpaid fringe
25   benefit contributions.  *See id.* at 2-5; Lauziere Decl. ¶ 14.  This Court ordered Plaintiffs "to provide
26   supplemental briefing and evidence explaining and supporting the hourly contribution rates used in
27   Ms. Lauziere's audit report."  Order Re Supplemental Briefing and Evidence at 4 (Docket No. 23).
28   In response, Plaintiffs produced a supplemental declaration from Ms. Lauziere detailing her

7

United States District Court

For the Northern District of California

1  determination of the hourly contribution rates based on the rates set out in the Master Agreement.

2  Lauziere Supp. Decl. ¶ 5; *id.*, Ex. B.  Based on the additional evidence provided, the Court finds that

3  Plaintiffs have met their burden of proof regarding the unpaid contributions for the October 2010 to

4  December 2012 period.

5           Each of the Trust Agreements contain provisions allowing for liquidated damages on

6  delinquent contributions, "assessed at a flat fee of $150.00 per month." and for "simple interest of

7  1.5% per month on all unpaid contributions."  Lauziere Decl. ¶ 12; *see also id.*,  Ex. A (Laborers

8  Health and Welfare Trust Fund Agreement), Art. II § 10 (authorizing the Board of Trustees to "set

9  or amend the liquidated damages and interest provisions applicable to delinquent Contributions").

10  Under Ninth Circuit law, an award of liquidated damages under § 1132(g)(2) is "mandatory and not

11  discretionary." *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d

12  557, 569 (9th Cir. 1984).

13          Plaintiffs seek $1,200.00 in liquidated damages (eight payment months at $150.00 per

14  month) and calculate that Montes Bros. owes an additional $12,705.09 in interest.  Interest was

15  assessed beginning in the first month in which contributions were delinquent and in every month

16  thereafter until August 2014, when the amounts were submitted to the Court in conjunction with

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**United States District Court**
For the Northern District of California

Plaintiffs' motion for default judgment.[1]  In total, Plaintiffs calculate their damages to be $44,978.43.  *See* Lauziere Decl. ¶ 14; *id.,* Ex. D.

On a motion for default judgment the "Plaintiff has the burden of proving damages."  *Bd. of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d at 1226; *see also Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) ("Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain.") (citations omitted).  The Court finds that Plaintiffs have met their burden as to their Trust Fund claims, and consequently awards damages to the Plaintiffs in the amount of $44,978.43.

### 2.  Injunctive Relief

Plaintiffs ask for an injunction directing Montes Bros. to submit to an audit of its financial records for the period of October 2010 to December 2012.  Such relief would be appropriate under ERISA to the extent the audit is tailored to the purpose of verifying that required contributions have been paid.  *See Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amerine Drywall Co.,*

---

[1]  Interest has been calculated using a 1.5% simple interest rate, and a term of 39 months. The following table reflects the interest calculations:

| PRINCIPAL | INTEREST | MONTHS |
|---|---|---|
| $2784.32 | $1628.83 | 39 |
| $2388.82 | $1289.96 | 36 |
| $1809.37 | $895.64 | 33 |
| $946.96 | $426.13 | 30 |
| $12547.22 | $5081.62 | 27 |
| $1843.19 | $663.55 | 24 |
| $6822.17 | $2148.98 | 21 |
| $1984.47 | $535.81 | 18 |
| $128.03 | $34.57 | 18 |
| $-181.2 | | |
| **TOTAL** | $31,073.35 | $12,705.09 |

*Inc.*, 239 F. Supp. 2d 26, 31 (D.D.C. 2002) ("ERISA authorizes the court to provide for other legal or equitable relief as the court deems appropriate [under 29 U.S.C. § 1132(g)(2)(E)]. This relief can include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records.").

Plaintiffs also ask the Court to retain jurisdiction over this case with regard to any contributions and damages determined to be owed to the Plaintiffs after the audit has been completed and the monthly contribution reports provided. Courts of this district have found such action appropriate. See *Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *11-12 (N.D. Cal. Apr. 15, 2004) ("This Court retains jurisdiction over this case with regard to contributions and damages determined owed to plaintiffs during the audit."); *Carpenters 46 Northern Cal. Counties Conference Bd. v. San Jose Woodworking, Inc.*, No. C00-4690 TEH, 2001 WL 1671056 (N.D.Cal. Aug. 14, 2001) ("This Court shall retain jurisdiction of this matter to enforce the Order compelling an audit and payment of all amounts found due and owing.").

Accordingly, the Court grants Plaintiffs' claims for injunctive relief. Montes Bros. is ordered to: permit a certified public accountant selected by the Plaintiffs to enter upon its premises during business hours, at a reasonable time or times, and to examine and copy such books, records, papers or report of Montes Bros. as may be necessary to determine whether Montes Bros. is making full and prompt payment of all sums required to be paid by it to the Funds at issue. In addition, the Court retains jurisdiction with regard to any contributions and damages determined to be owed to the Trust Funds after the audit has been completed and the monthly contribution reports provided.

      3.   <u>Attorney's Fees and Costs</u>

Finally, Plaintiffs ask to be awarded their attorney fees and costs in this matter. Plaintiffs have submitted the declaration of Concepcion E. Lozano-Batista (Docket No. 19) in support of their request for fees and costs, and have provided detailed time records documenting the 11.75 hours that two paralegals and four attorneys spent working on this case.

It is clear that costs and fees incurred by the Trust Fund Plaintiffs are recoverable under ERISA. Section 502(g)(2) of ERISA, codified at 29 U.S.C. § 1132(g)(2), "now makes the award of

United States District Court

For the Northern District of California

attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions." *Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983).  It is also "well-settled that the award of attorneys' fees is a matter within the discretion of the trial court, and that an award of attorneys' fees cannot be disturbed on appeal, absent a showing of abuse of discretion."  *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1116 (9th Cir. 1979) (cited with approval in *Kemmis v. McGoldrick*, 706 F.2d 993).

Having reviewed Plaintiffs' attorneys' billing records in detail, the Court finds that spending 11.75 hours on this case was both reasonable in light of the relative simplicity of this matter, as well as necessary to its effective prosecution.  *See* Lozano-Batista Decl., Ex. A (Docket No. 19-1).  Further, the Court finds that the rates charged by the attorneys and paralegals ($345 per hour for two attorneys, $290 per hour for the other two attorneys, and $145 per hour for the two paralegals) are reasonable in this legal market for attorneys of similar skill and experience.  *See id.*  Therefore, the Court awards the requested amount of $3,442.50 in attorney fees in full.

Plaintiffs also seek an award of $654.50 in costs.  Lozano-Batista Decl. ¶ 15.  Section 1132(g)(2) specifies that both "reasonable attorney's fees *and costs* of the action" are "to be paid by the defendant."  *Id.* (emphasis added).  The Court has reviewed Plaintiffs' accounting of their costs in this matter (e.g., filing fees, service-of-process fees), and finds that all costs claimed are those "customarily billed separately in [this legal] market" and are thus "recoverable as 'reasonable attorney's fees' under 29 U.S.C. § 1132(g)(2)(D)."  *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006).  Therefore, the Court awards Plaintiffs $654.50 in costs, bringing the total fee and cost award in this matter to $4,097.00.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Default Judgment.  Plaintiffs are awarded $44,978.43 for unpaid contributions, interest, and liquidated damages on their Trust Fund claims and $4,097.00 for reasonable attorney costs and fees.  The Court also grants Plaintiffs' request for injunctive relief.

///

///

1    The Court will retain jurisdiction over enforcement of this judgment for a limited period of

2 time.  A status conference in this case will be held to discuss status of enforcement on May 7, 2015.

3 Plaintiffs shall serve this Order on Montes Bros. and shall file a proof of service with the Court

4 within seven (7) days of the date of this order.

5    This order disposes of Docket No. 17.

6

7    IT IS SO ORDERED.

8

9 Dated:  November 5, 2014

10

11    _____
       EDWARD M. CHEN
       United States District Judge

**United States District Court**
For the Northern District of California

12